and if possible, I'd like to reserve two minutes for a rebuttal here. Yes, certainly. Your Honors, I'd like to begin with the first issue that was argued in our brief, which deals with the Brady violation. The District Court abused its discretion when it denied our motion for a new trial based on newly discovered evidence because it used improper analysis. The case law is clear that the court, when it deals with a Brady violation, should have used what's referred to as the Brady test or the Brady standard, which has three elements. I'm sorry. What did the District Court use and then compare it with the Brady standard, please? The District Court basically used a sufficiency of evidence. But it said it was not using a sufficiency of the evidence and it was well aware of the difference. It used, Your Honor, it basically used that together with the standard when looking at motions for a new trial based on newly discovered evidence. The Brady test is different because it's a test that is more defense friendly than the other test. I certainly agree and the Supreme Court reminded us of that yesterday. Okay, go ahead. And that's the test, that's the proper test that the District Court should have used. I'd like to focus on the third element of that test, which is whether there was prejudice by suppressing the evidence at trial. I submit to the court that there was prejudice because it would have been a reasonable probability, had we had the information at trial and been able to use it to cross-examine the cooperating witness, the outcome of the case would have been different. Before you move on, I just, on this assertion that the court misapplied the standard that should have been applied in this Brady context, she writes, having witnessed all of the testimony, evidence, and arguments at trial, however, the court cannot find with a reasonable probability that confidence in the jury verdict had been undermined. That focus on the reliability of the verdict strikes me as, it's not a sufficiency of the evidence analysis, that strikes me as consistent with the Brady test. So what is, what's wrong with that formulation? Your Honor, the Brady test states that if there's a reasonable probability that the outcome would have been different, then there's a Brady violation. It's different than the test that was used by the court. The court focused... But that formulation about the reliability of the verdict undermining confidence in the verdict, that is, I believe, routinely used in the Brady context. That sort of reasonable probability formulation has been, this gloss is often added to it about confidence in the verdict, reliability of the verdict. So I'm struggling to see what, where is the legal error in the district court's analysis? Because that seems to be the crux of the argument. Your Honor, the court concentrated more on what the overwhelming evidence that was presented at trial... No, no, that's your assumption. What the court said was that she was finding reasonable probability. Now you're suggesting that there is some material difference because she used a different set of words. She said that there was no reasonable probability that the verdict was unreliable. That's essentially what she said. And you somehow are suggesting to us that that's different than saying that there is a reasonable probability that the outcome would have been different. It seems to me it's two ways of saying the same thing. No, it isn't, Your Honor, for this reason. If there's a reasonable probability that the outcome would have been different, you analyze it from the point of view of the information that was suppressed and what effect that could have had on the jurors. And that was not done by the district court. And there's the difference. No, because when you analyze it from the point of view of whether there's a reasonable probability that the verdict was reliable, what you really have to do to get to that point is to consider the effect on the jurors and whether the jurors would have come to a different verdict had they had the evidence. Just as a follow-up to Judge Salyer's question, how else can you explain the district court's focus on other witnesses who testified to the involvement of your client in handling large amounts of cash when individuals came to his facility? I mean, she's pointing out, well, there was all this other evidence that was in there, so the fact that this material was not available to impeach this particular witness, it's not going to have any effect on the verdict because they had all this other evidence that goes to the same point. That's exactly what she should have done. Your Honor, that's a great question. And to properly answer that question, it's important to understand what the theory of defense was. The defendant was charged with perjury. Our defense theory was that the question posed to him at the grand jury was vague and ambiguous. The investigation dealt with two different entities. One was GSM City and another one was GSM City Supercenter. Our theory was that the defendant had never received any payment or any cash while he was working at GSM City Supercenter. To a matter of fact, Your Honor, we conceded through opening the trial and even at closing argument that the defendant had received cash at GSM City and all the witnesses testified to that. The only witness that testified that the defendant had received any money at GSM Supercenter was the cooperating witness. The evidence that was suppressed was an arrest for theft while the cooperating witness was working at GSM City Supercenter. There was no corroboration except for what the cooperating witness testified to. Had I had that information, it would have been great to cross-examine this witness and establish a motive for him to lie. That's why there's a reasonable probability that the outcome of this case would have been different. Counsel, the government, as I understand it, makes the argument that at the grand jury, your client took pains to make clear that the inquiry about whether he was accepting large amounts of money, whether that inquiry applied both to GSM City and GSM City Supercenter. So contrary to your suggestion, he understood that the question embraced both business places, not just the one. Your Honor, if you take a close look at the transcripts, he's asked questions back and forth about the two different entities. When it comes time to this specific question that gave rise to the perjury charge, there's no mention of a specific entity. And that is exactly what our theory was, that this question was vague and ambiguous, and the government should have been more specific as to what entity they were inquiring. Thank you, Counsel. Thank you. Good morning. May it please the Court, John Alex Romano on behalf of the United States. Can I just start with, why didn't you just turn over this information? It seems obvious that you should have. We agree, Your Honor. It was favorable impeachment evidence that should have been turned over. I think the trial prosecutor was proceeding in good faith, but I think he was just incorrect in concluding that the information about DelGarcia's arrest would have been entirely admissible and therefore it was irrelevant. I think the district court got it right in saying that while the arrest report itself might not have been admissible, the defense might have been able to inquire on cross-examination about some of the conduct underlying it. And he's just said he certainly would have loved to have had that information, and he was entitled to it. So the real question is the effect of the government's error here. Exactly, Your Honor. We argue that the information about DelGarcia's arrest on a state theft charge is not material  And that's for the primary reason that DelGarcia's testimony at trial was strongly corroborated. The most incriminating evidence that DelGarcia provided against Calderon, as I think my counterpart was conceding, concerned the handling of cash at GSM City. And on that point, two DEA task force officers testified each that on multiple occasions in 2010, they delivered amounts of cash to Calderon at GSM City and that they observed him counting cash, all of which led to the concession by Calderon's attorney that in fact Calderon handled cash at GSM City. Now we disagree that the jury might have convicted Calderon based on the limited, uncorroborated testimony of DelGarcia concerning what happened at the Supercenter store. If you look first at the questioning of Calderon in the grand jury, it's very clear, and it calls for him to answer based on whether or not he handled cash, received cash at GSM City. As I think Judge Lopez pointed out, Calderon does sort of try to broaden the questioning, but he's not limiting when he denies receiving cash, he's not limiting those denials to what happened at the Supercenter store. Well, he seems to suggest, I'm only focusing on a portion of the grand jury testimony, but he seems to be suggesting that sort of the mode of operation was the same at both places, GSM City and GSM City Supercenter. He takes some care actually to sort of expand the inquiry from the prosecutor. Correct. So he's sure that he understands we're talking about both entities. Correct. He broadens his answers. And certainly also if you look at what DelGarcia testified at trial about the Supercenter store, on cross-examination he conceded that he could not remember actually seeing Calderon handle cash. And on redirect, his testimony was only that there was a big chance of possibility that Calderon received cash at the Supercenter store. So we think the district court, there was strong support for its conclusion that the jury based its verdict on the evidence concerning the GSM City store. And on that point, again, DelGarcia's testimony was strongly corroborated at trial. Do you agree with counsel that the trial court's sort of restatement of the standard is an error of law, is not precisely the Brady standard? No, Your Honor, we don't agree. The court looks, for example, at the district court's opinion as reproducing the addendum to the defendant's brief. But, for example, addendum pages 17 to 18 correctly lays out the legal standard. Addendum page 23, the district court expressly says, you know, Brady-Giglio analysis is not a sufficiency test. In fact, the court mentions sufficiency of the evidence because there had been an argument by the defense in its new trial motion that the evidence was not sufficient. So we don't think that there was any error of law by the district court in applying the relevant Brady-Giglio standards. We made other arguments in our brief as to the materiality of the DelGarcia information. I haven't addressed any other questions the court may have. How often is there training on Brady obligations for federal prosecutors? Yes, Your Honor, there is a requirement, and I believe it's even laid out in the U.S. Attorney's Manual, of two hours every year of specific training on discovery obligations. And I can say, having done the training myself, you have to certify, write a written certification that you've done it. So there is a requirement of two years. Was this training done for this prosecutor after this? Your Honor, I do not know the answer to that question. I do know that the prosecutor is no longer with the U.S. Attorney's Office. He is still employed by the Department of Justice, but he's moved on to a different position. We ask that the court affirm the judgment of conviction. Thank you. Thank you. Yes. Your Honor, for the government to say that this, the evidence that was suppressed, is immaterial and would not have had an effect on the jury and the outcome of the case, it's really not fair, and it's basically stepping to the shoes of the jurors and guessing what they would have done. I can tell the court this, that subsequent to this case. Excuse me, isn't that what the Brady inquiry is? The prejudice prong requires the district court to look at all the evidence, all right, and you call it a guess. I call it make a reasoned conclusion as to what effect that would have had on the, if any, on the outcome of the case. And that seems to be what the judge did in this case. Again, it looked at it not from the point of view of what the suppressed evidence and the value it had. I can tell the court that subsequent to this, the defendant had been indicted in a related case in the Southern District of Florida. This information was available to me, and I was able to use it to cross-examine this same witness. And in that case, the defendant was acquitted of all the charges. I can tell the court, based on my theory at trial, it would have been valuable, it would have been a great tool for me to be able to cross-examine this defendant, establish a motive, and argue that at closing. So what are the differences between the two cases? Was the Florida case a perjury case? It was not a perjury case, Judge, but it was related because the defendant was charged with failing to file the 8300 forms when he had received all this money while working at GSM City. In the perjury case, that was the basis of the perjury case, that he misrepresented, he lied when he was asked that question. Again, this witness that testified was the only witness to testify that he had received any money at GSM City Supercenter, which was the basis of our theory. That's why it was so important. Okay. Thank you. Thank you. Thank you.